UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ANTHONY LIVINGSTON,

                           Plaintiff,                  17-CV-0567Sr

v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

                           Defendant.

---

## DECISION AND ORDER

As set forth In the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #13.

## BACKGROUND

Plaintiff applied for disability insurance benefits and supplemental security income payments with the Social Security Administration ("SSA"), on July 12, 2013, alleging disability beginning March 2, 2010, at the age of 27, due to chronic neck and back pain and depression. Dkt. #6, pp.184-215.

On June 18, 2015, plaintiff, represented by counsel, and an impartial vocational expert, Jeanne Beachler, appeared and testified before Administrative Law

Judge ("ALJ"), Sharon Seeley. Dkt. #6, pp.31-84. Plaintiff, a high school graduate, testified that he injured his shoulder at work on April 30, 2003 and subsequently received a workers' compensation settlement. Dkt. #6, p.47. Plaintiff testified that he left his job as a debt collector in 2010 because he was in pain, unable to sit, and unable to miss work for doctor's appointments. Dkt. #6, p.45. Plaintiff testified that he was in a motor vehicle accident on February 8, 2013, which exacerbated his condition. Dkt. #6, p.48. Plaintiff testified that he drove his daughter to school and home each day, but experienced difficulty driving more than ten minutes because sitting for too long caused a strain in his back and a tingling in his foot. Dkt. #6, pp.38-39. Plaintiff testified that he could lift no more than 10-15 pounds without pain, explaining that he couldn't even hold his daughter, who didn't weigh more than 27 pounds. Dkt. #6, p.60. Plaintiff also testified that he has "tingles" that shoot back and forth with his left leg, requiring him to have to sit down or stand up. Dkt. #6, p.60. He believed that he could walk a half hour, stand about 45 minutes and sit an hour, explaining that he was constantly getting up and moving to try to ease his pain. Dkt. #6, p.60. Plaintiff testified that he also experienced depression and anxiety and that the medication for that made him dizzy and sleepy. Dkt. #6, p.61.

When asked to assume, *inter alia*, that plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; sit for 6 hours out of an 8 hour work day, alternating one hour of sitting with 10 minutes of standing; stand or walk for 6 hours out of an 8 hour work day, alternating 30 minutes of walking one hour of standing with 10 minutes of sitting; occasionally stoop, kneel, crouch or crawl; and occasionally

reach and finger with the non-dominant left upper extremity, the vocational expert opined that plaintiff could perform his past relevant work as a debt collector and mail room helper, and could also work as a storage facility clerk or machine tender. Dkt. #6, pp.72-74. The vocational expert explained that her opinion regarding plaintiff's ability to alternate standing and sitting in the suggested occupations was based upon her experience in job placement. Dkt. #6, p.81. When asked whether plaintiff could perform these jobs if he was never able to reach with his left non-dominant extremity, the vocational expert testified that plaintiff would still be able to work as a debt collector. Dkt. #6, p.74. If plaintiff was limited to a low stress environment, with no supervisory responsibilities, or independent decision making except for simple, routine work-related decisions, with frequent incidental interaction with the public, the vocational expert ruled out debt collector and cashier, but testified that plaintiff could still perform the jobs of machine tender and storage facility clerk, as well as sedentary jobs of document preparer and assembler. Dkt. #6, p.75.

The ALJ rendered a determination that plaintiff was not disabled on February 2, 2016. Dkt. #6, pp.14-26. The Appeals Council denied plaintiff's request for review on April 24, 2017. Dkt. #6, p.5. Plaintiff commenced this action seeking review of the Commissioner's final decision on June 23, 2017. Dkt. #1.

**DISCUSSION AND ANALYSIS**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in

the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 404.1505(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a). At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 404.1520(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to

disability benefits. 20 C.F.R. § 404.1520(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient residual functional capacity ("RFC"), for the claimant to return to past relevant work. 20 C.F.R. § 404.1520(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 404.1520(g).

In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity since the alleged onset date of March 2, 2010; (2) plaintiff's brachial plexus injury and depressive disorder constitute severe impairments; (3) plaintiff's impairments did not meet or equal any listed impairment; (4) plaintiff retained the capacity to perform less than a full range of light work, *to wit*, plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, sit for 6 hours of an 8 hour workday, stand and/or walk for 6 hours of an 8 hour workday, if able to sit for 10 minutes after walking one hour, occasionally stoop, kneel, crouch and crawl, occasionally finger with the non-dominant left upper extremity but never reach overhead with the non-dominant left upper extremity, work in a low-stress environment, *to wit*, one with no supervisory responsibilities, no independent decision making except with respect to simple routine work-related decisions and no frequent changes in work process, routines or settings, respond appropriately to ordinary levels of supervision, and have frequent incidental interaction with co-workers or the general public; and (5) plaintiff retained the functional

capacity to work in unskilled, light work positions such as storage facility clerk and machine tender or unskilled sedentary positions such as document preparer or assembler and was not, therefore, disabled within the meaning of the SSA. Dkt. #6, pp.16-26.

Plaintiff argues that the ALJ failed to explain the weight he afforded to the opinion of consultative examiner, Dr. Liu, after failing to afford Dr. Diaz Del Carpio's treating source opinion controlling weight. Dkt. #10-1, p.19. Moreover, plaintiff argues that the ALJ's determination regarding plaintiff's limitations for prolonged walking, bending, kneeling and overhead reaching are inconsistent with Dr. Liu's opinion. Dkt. #10-1, p.21 & Dkt. #14, p.1. Plaintiff further argues that Dr. Liu's opinion was stale and failed to account for plaintiff's deteriorating condition. Dkt. #10-1, p.22.

The Commissioner argues that the ALJ explained that she gave greater weight to Dr. Liu's opinion because his assessment, which was based upon his examination of plaintiff, was consistent with the medical evidence and that the ALJ's determination of plaintiff's RFC was consistent with Dr. Liu's opinion. Dkt. #12-1, pp.23-25. The Commissioner further argues that plaintiff received very little treatment subsequent to his examination by Dr. Liu, and the medical record does not suggest that plaintiff's medical condition deteriorated. Dkt. #12-1, pp.25-26. Finally, the Commissioner argues that the ALJ properly discounted Dr. Diaz Del Carpio's opinion regarding plaintiff's limitations given the lack of documentation substantiating such limitations within plaintiff's medical records. Dkt. #12-1, pp.27-28.

The ALJ's determination of plaintiff's residual functional capacity is supported by substantial evidence in the record and properly afforded greater weight to Dr. Liu's consulting opinion than Dr. Diaz Del Carpio's treating opinion because, as the ALJ noted, Dr. Liu's opinion was based on personal examination and was more consistent with the medical evidence. Dkt. #6, p.23. Although Dr. Diaz Del Carpio's physical examination generally noted limited mobility and range of motion in plaintiff's left arm/shoulder, there are no measurements in his treatment notes and no evidence of any examination by Dr. Diaz Del Carpio which would relate to plaintiff's capacity to sit, stand, walk, stoop, kneel, crouch and crawl. *See, e.g.*, Dkt. #6, p.635. Dr. Diaz Del Carpio's treatment notes indicate that plaintiff's neck pain was resolved as of January 30, 2013, as evidenced by the EMG of plaintiff's left arm which "showed normal study with no evidence of cervical radiculopathy on the left and right." *See, e.g.*, Dkt. #6, p.572. With respect to plaintiff's lumbar pain, on August 16, 2013, Dr. Diaz Del Carpio noted the June 27, 2013 EMG results indicated no electophysiological evidence of active or chronic lumbar radiculopathy, lumbrosacral pleosopathy, focal lower extremity entrapment syndrome, diffuse lower extremity peripheral neuropathy of myopathy. *See, e.g.*, Dkt. #6, p.579. Moreover, Dr. Diaz Del Carpio's physical residual functional capacity questionnaire does not indicate any limitations in plaintiff's ability to sit, stand, walk, stoop, kneel crouch or crawl. Dkt. #6, pp.607-609. Furthermore, Dr. Diaz Del Carpio's opinion that plaintiff could never lift ten pounds and never look up or down, turn his head in either direction or hold his head in a static position is clearly contradicted by plaintiff's testimony that he drove his daughter to school each day and could lift up to 15 pounds. Dkt. #6, pp.38-39 & 60.

Dr. Liu's examination of plaintiff on September 5, 2013 noted the following:

> Cervical spine shows full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally. . . . Lower lumbar spine flexion and extension 50 degrees, lateral flexion 15 degrees bilaterally, and rotation 15 degrees bilaterally. SLR test positive at 10 degrees bilaterally confirmed in supine and sitting position. Full ROM of right shoulder. Left shoulder forward elevation 100 degrees, abduction 100 degrees, adduction 15 degrees, internal rotation 20 degrees, and external rotation 45 degrees.

Dkt. #6, p.538. Dr. Liu discerned no evidence of muscle atrophy in the extremities and observed intact hand and finger dexterity, left grip 4/5, right grip 5/5. with mild decreased ability to zip, button and tie with the left hand. Dkt. #6, p.538. Dr. Liu diagnosed chronic left shoulder pain, chronic low back pain and anxiety, opining that plaintiff's prognosis was stable and that plaintiff had "moderate limitation for prolonged walking, bending, kneeling, and overhead reaching." Dkt. #6, p.538.

Dr. Liu's opinion of moderate limitation is consistent with a lumbar MRI on February 22, 2013 revealing minimal disc bulges at L3-4; L4-5; and L5-S1 (Dkt. #6, pp.305), and an unremarkable cervical MRI from the same date. Dkt. #6, p.304. This Court agrees with those cases finding that an opinion of moderate limitation for prolonged walking and standing is not inconsistent with the ability to perform light work. *See Harrington v. Colvin*, No. 14-CV-6044, 2015 WL 790756, at *14-15 (W.D.N.Y. Feb. 25, 2015) (collecting cases). In any event, the vocational expert also identified sedentary work which plaintiff could perform. Dkt. #6, p.75.
.

The day after Dr. Liu's examination, plaintiff underwent an extensive EMG of the left upper extremity which was "normal," with "no electro diagnostic evidence of a left cervical radiculopathy, brachial plexopathy or median neuropathy at the wrist, [carpal tunnel syndrome]." Dkt. #6, p.542. On September 9, 2013, plaintiff underwent an MRI of the brachial plexus which revealed

> mild increase in thickness and signal of the left brachial plexus at the level of the upper and middle trunks, extending to the divisions and all cords, but most pronounced in the lateral and posterior cords. No evidence of associated enhancement is noted. There is no evidence of denervation within the shoulder girdle muscles. The findings are most consistent with mild stretch injury of the brachial plexus.

Dkt. #6, p.564. Dr. Siddiqui examined plaintiff on September 24, 2013 and diagnosed brachial plexopathy with intractable pain. Dkt. #6, p.566.

Subsequently, plaintiff was seen by his primary care physician, Dr. Diaz Del Carpio, on January 22, 2014, for pre-operative clearance for a neurostimulator implant wherein he informed Dr. Diaz Del Carpio that he could "walk more than 4 blocks/climb stairs without getting SOB" (Dkt. #6, p.578); on May 7, 2014 wherein he informed Dr. Diaz Del Carpio that he did not feel that the neurostimulator worked and that he had stopped taking Lortab because it did not make any difference in his pain and where, upon review of symptoms, Dr. Diaz Del Carpio noted "[n]o back pain" (Dkt. #6, pp.587 & 589); on August 7, 2014, wherein he informed Dr. Diaz Del Carpio that his pain had increased today (Dkt. #6, p.597); on February 12, 2015, wherein he informed Dr. Diaz Del Carpio that he stopped seeing his pain management doctor because none of the medications were helping and he is able to manage his pain with Ibuprofen and

was able to enjoy his activities and did not feel depressed (Dkt. #6, p.614); on March 30, 2015 wherein he complained of a recent exacerbation with pain, but denied taking his NSAIDS and, upon examination, his neck was recorded as supple and non-tender (Dkt. #6, pp.623 & 625); on May 12, 2015 wherein Dr. Diaz Del Carpio observed that plaintiff was stable overall and his depression and mood was better (Dkt. #6, pp.633 & 635); and June 16, 2015 wherein plaintiff informed Dr. Diaz Del Carpio that he was sleeping better, which has helped with the pain and that his pain is slightly better controlled than before, but increases when he moves his left arm and shoulder or becomes frustrated. Dkt. #56, pp.643 & 645. None of these treatment notes suggest that plaintiff's medical condition deteriorated subsequent to Dr. Liu's examination.

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #10), is denied, and the Commissioner's motion for judgment on the pleadings (Dkt. #12), is granted.

**SO ORDERED.**

**DATED:  Buffalo, New York**
**February 12, 2019**

  *s/ H. Kenneth Schroeder, Jr.*
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**